UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NICHOLAS JARMAR BUTLER,

    Petitioner,

v.                                                            CASE NO. 6:13-cv-136-Orl-31GJK

SECRETARY, DEPARTMENT
 OF CORRECTIONS, et al.,

    Respondents.
_____/

## ORDER

This case is before the Court on the amended petition for habeas corpus relief (Doc. No. 6) and the supporting memorandum of law (Doc. No. 7) filed by Petitioner pursuant to 28 U.S.C. section 2254.  Upon consideration of the amended petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.  Thereafter, Respondents filed a response to the amended petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 10).  Petitioner filed a reply (Doc. No. 17) to the response.

I.    *Procedural History*

The State charged Petitioner by information with conspiracy to traffic in cocaine (count one) and attempted trafficking in cocaine (count two).  A jury found Petitioner

guilty as to both counts. The trial court adjudicated Petitioner guilty of the crimes and sentenced him to imprisonment for a term of twenty years as to count one and for a term of fifteen years as to count two, with the sentences to run concurrently. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a petition for writ of habeas corpus with the state appellate court. The state appellate court directed the State to file a response and then denied the petition.

Petitioner then filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which the trial court denied. Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*.

## II.     Legal Standards

### A.    *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

The instant habeas corpus petition is governed by the AEDPA. Under the AEDPA, if a claim was adjudicated on the merits in state court, habeas corpus relief can only be granted if the state court's adjudication results in one of two outcomes. It must have either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

The Supreme Court has stated that a "state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Brown v. Payton*, 544 U.S. 133, 141 (2005). Moreover, a "state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Id*. Section 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citations omitted) (quotations omitted).

B.   *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]   *Id*.

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome

3

at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

Because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, it follows that when the two apply in tandem, review is doubly so." *Morton v. Sec'y, Fla. Dept. of Corr.*, 684 F.3d 1157, 1167 (11th Cir. 2012) (citation omitted) (quotation omitted).  Under § 2254(d), "the question is not whether counsel's actions were reasonable [but] whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard."  *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

### III.  Analysis

### A.  *Claim One*

Petitioner argues that the trial court erred by denying his counsel's motion to withdraw.  He states that counsel "could not provide effective representation due to a conflict of interest."  See Doc. No. 6 at 5.  This claim was raised in Petitioner's direct appeal.

---

determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

Prior to jury selection, Petitioner's counsel, James C. Dauksch, stated "Your Honor, at this time I, respectfully withdraw in Mr. Butler's case. I would let the Court know that I think we have irreconcilable differences that would prevent me from continued effective representation of Mr. Butler." *See* App. A, Transcript of Trial at 4. The trial court then asked him to state the specific grounds for the irreconcilable differences, and Mr. Dauksch stated "I don't feel that it's in Mr. Butler's best interest for me to delve into specifics." *Id*. The trial court asked Petitioner his position, and Petitioner stated he was going along with Mr. Dauksch withdrawing because Mr. Dauksch failed to present certain exculpatory evidence to the State. *Id*. at 5. The trial court found that the "eleventh-hour" motion was untimely and that Petitioner had not shown a conflict existed. *Id*. at 6-7.

"In order to establish an ineffective assistance of counsel claim arising from an alleged conflict of interest, a defendant 'must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" *Lightbourne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir. 1987) (quoting *Oliver v. Wainwright*, 782 F.2d 1521, 1524 (11th Cir. 1986)). A potential, speculative, or hypothetical conflict is insufficient. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). And, the mere possibility of a conflict of interest "is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350.

In this case, the record fails to demonstrate that Petitioner's trial counsel actively represented conflicting interests. Petitioner raises vague and conclusory allegations of a conflict of interest, which are devoid of any supporting factual allegations and do not

5

demonstrate a conflict of interest. The mere fact that Petitioner and his counsel disagreed on trial strategy does not demonstrate a conflict of interest. Petitioner's vague and conclusory allegations fail to establish that his counsel actively represented conflicting interests and that the conflict of interest adversely affected his counsel's performance. Consequently, Petitioner has not shown that this claim is meritorious.

As such, Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects that claim.

B.    *Claim Two*

Petitioner states that appellate counsel was ineffective for failing to argue that "the analysis employed by the trial court erred was not adequate under Batson, Melbourne, which resulted in a decision that casts doubt on the jury panel, as a whole."[2] *See* Doc. No. 6 at 6. This claim was raised in the petition for writ of habeas corpus filed in the state appellate court.

The record reflects that Mr. Dauksch accepted the jury and that Petitioner himself objected to the jury only as to "the grounds of ineffective counsel that we stated earlier." *See* App. A, Transcript of Trial at 179. Consequently, this issue was not

---

[2]The decisions in *Batson v. Kentucky*, 476 U.S. 79 (1986) and *Melbourne v. State*, 679 So.2d 759 (Fla. 1996), require that, after the proponent of the strike has offered a race-neutral explanation, the court must go on to determine whether the opponent of the strike has established purposeful discrimination.

6

preserved for appellate review because Petitioner accepted the jury as selected and did not raise an objection as to this jury issue.

The standard for analyzing ineffective assistance claims is the same for trial and appellate counsel. *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987). The Eleventh Circuit has applied the Supreme Court's test for ineffective assistance at trial to guide its analysis of ineffective assistance of appellate counsel claims. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).

Under Florida law, the failure of trial counsel to object at trial bars appellate review. *Jackson v. Dugger*, 931 F.2d 712, 715 n.7 (11th Cir. 1991); *Davis v. State*, 728 So. 2d 341 (Fla. 1st DCA 1999) (holding that issues regarding the denial of the defendant's motion to suppress and admission into evidence of his statements to police were not preserved for appellate review, since no objection was made during the trial when the statements were admitted). The sole exception to this rule is when the error constitutes "fundamental error." *Jackson*, 931 F.2d at 715 n.7. However, Petitioner does not establish that the arguments complained of herein presented "fundamental error." Consequently, since this issue was not preserved for review on appeal, appellate counsel was procedurally barred from raising them on direct appeal and therefore was not deficient in failing to do so. *Id*. at 715. Hence, this claim is without merit.

As such, the state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent,

nor was it based upon an unreasonable determination of the facts in light of the evidence presented.

C. *Claims Three and Four*

Petitioner alleges that section 893.13 and section 893.135 of the Florida Statues are unconstitutional (claim three) and that his sentence is illegal as result of the unconstitutionality of those sections (claim four). These claims were raised in Petitioner's Rule 3.850 motion and were denied because the Supreme Court of Florida had rejected these challenges to the statutes.

Florida's Comprehensive Drug Abuse Prevention and Control Act provides that, except as otherwise authorized, "it is unlawful for any person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance" or "to be in actual or constructive possession of a controlled substance." § 893.13(1)(a), (6)(a), Fla. Stat. Violations range from misdemeanor offenses to first-degree felonies. § 893.13(1)-(2), Fla. Stat.

The decision in *Shelton v. Sec'y, Dep't of Corrs.*, 802 F. Supp. 2d 1289 (M.D. Fla. 2011) (hereinafter referred to as "*Shelton I*") found section 893.13, Florida Statutes to be unconstitutional. However, the Eleventh Circuit Court of Appeals subsequently entered an opinion reversing *Shelton I* on the basis that there had been no showing that the Florida courts unreasonably applied clearly established federal law by upholding the statute. *See Shelton v. Sec'y Dep't of Corrs.*, 691 F.3d 1348 (11th Cir. 2012) (hereinafter referred to as "*Shelton II*"). Thus, the district court's decision in *Shelton I* affords

Petitioner no benefit because that decision was reversed on appeal in *Shelton II*. As a result, claim three and four are without merit, and the state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.

D.    *Claim Five*

Petitioner states that Mr. Dauksch was ineffective by failing to renew and reserve the objection to the State's allegedly improper "peremptory challenge on a black juror." *See* Doc. No. 6 at 15. This claim was raised in Petitioner's Rule 3.850 motion and was denied because the State had provided a race-neutral reason.

The potential juror, Ms. Owens, had a cousin who was in jail on a pending burglary charge, and she had recently visited with the cousin while he was in jail. *See* App. A at 68-69. Ms. Owens previously visited the same cousin in jail "awhile ago." *Id*. at 71. The State moved to strike Ms. Owens and argued as follows:

> Ms. Owens stated in jury selection that she does have a cousin who has a pending case of burglary. This particular cousin has had a prior charge that she's not aware of the charge, but in the past two or three months she's been to the jail to see him. And it's the State's position that she may have potential bias against the State in that regard. And that's our race-neutral reason.

*Id*. at 137-38. The trial court accepted the State's "race-neutral reason." *Id*.

Under Florida law, "the fact that a prospective juror has been previously arrested or has a relative who has been is generally considered to be a valid race-neutral reason

9

for the exercise of a peremptory challenge." *Smith v. State*, 799 So. 2d 421, 424 (Fla. 5th DCA 2001). Further, the fact that such a potential juror asserts that he or she can, nevertheless, be fair and impartial, does not mean that the State must be satisfied with the response. *Id*. Here, the race-neutral reason offered by the State for the preemptory strike was fully supported by the record.

Mr. Dauksch noted that another potential juror had a family member in trouble, but the trial court pointed out that the potential juror did not have a family member with a pending charge, as the charge had been disposed of by way of pre-trial intervention. App. A at 138. The record shows that the trial court assessed the genuineness of the State's reason for its peremptory strike in light of the circumstances of the case and the total course of the voir dire as required. Moreover, the record clearly shows that Ms. Owens was not singled out for special treatment. The State gave a race-neutral reason for striking Ms. Owens, and the trial court's assessment of the credibility of that reason, based on the facts and circumstances of the instant case, was proper.[3]

---

[3]The Supreme Court of Florida set forth a three-step guideline for resolving an allegation of discrimination in peremptory challenges in *Melbourne*, 679 So.2d at 764:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
>
> At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the

Consequently, there has been no showing that Mr. Dauksch acted deficiently with regard to this matter or that Petitioner sustained prejudice.

As such, Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects that claim.

E.  *Claim Six*

Petitioner asserts that Mr. Dauksch was ineffective for failing to object to the vindictive sentence and sentence disparity. This claim was raised in Petitioner's Rule 3.850 motion and was denied because the sentence was well within the statutory maximum and was proportionate to the severity of the crime and the sentence of the co-defendant.

At sentencing, the State requested a longer sentence based on the evidence that Petitioner was the planner/organizer of the conspiracy to traffic cocaine and based on Petitioner's history of similar drug offenses. *See* App. A at 490-91. In fact, the State described Petitioner as "the ringleader of this whole episode" and argued that

---

> explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.

Petitioner was "deserving of more time than the fifteen-year minimum mandatory and more time than the codefendant in this case." *Id*. at 491.

The trial court appropriately considered those matters and, ultimately, sentenced Petitioner to imprisonment for a term of twenty years, which was well-within the statutory maximum. *See Atwater v. State*, 781 So. 2d 1149, 1153 (Fla. 5th DCA 2001) (difference in sentencing between co-defendants did not amount to cruel and unusual punishment because each defendant was situated differently based on their degree of influence and involvement in the conspiracy, their cooperation with the prosecution, and their amenability to be rehabilitated); *see also Lakoskey v. United States*, CIV. 07-3581 (JNE), 2008 WL 4277714, at *4 (D. Minn. September 15, 2008) ("A defendant cannot rely upon his co-defendant's sentence as a yardstick for his own; a sentence is not disproportionate just because it exceeds a codefendant's sentence.") (citation omitted) (quotation omitted). Thus, Petitioner has not shown that the trial court committed a sentencing error, and Mr. Dauksch was not deficient with regard to this matter. As such, the state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.

F. *Claim Seven*

Petitioner states that Mr. Dauksch coerced/threatened him into waiving his right to testify. This claim was raised in Petitioner's Rule 3.850 motion and was denied

because Petitioner told the trial court that he was not going to testify and that he was not coerced into making that decision.

At trial, the trial court discussed with Petitioner whether he would testify. The trial court explained that it was Petitioner's decision and discussed the advantages and disadvantages of testifying. Petitioner then informed the trial court that he had discussed the matter with Mr. Dauksch, that he had decided not to testify, and that no one had pressured him into making his decision. *See* App. A at 373-74.

Clearly, Petitioner's claim that he was coerced/threatened into waiving his right to testify was refuted by the record. The Court finds that Mr. Dauksch made a sound tactical decision to recommend that Petitioner not testify at trial. The Court notes that, if Petitioner had testified and given inconsistent statements, his veracity would have been impugned, thereby strengthening the State's case. In addition, Mr. Dauksch and the trial court properly informed Petitioner with regard to his right to testify and the effect of testifying. As mentioned, Petitioner acknowledged at the trial that he discussed the matter with Mr. Dauksch. Under the circumstances, Petitioner has not shown that counsel acted deficiently or that he sustained prejudice. As such, the state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.[4]

---

[4]In his reply, Petitioner also mentions that Mr. Dauksch coerced him into not testifying at the trial of his co-defendant held on February 25, 2010. Assuming, without

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (Doc. No. 6) filed by Nicholas Jarmar Butler is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[5] Accordingly, a Certificate of Appealability is **DENIED** in this case.

---

deciding, that Mr. Dauksch coerced Petitioner into not testifying at the trial of his co-defendant, Petitioner has not demonstrated prejudice. In fact, he fails to assert any matters that he would have testified to at the trial of his co-defendant that would have been beneficial at his own trial. Therefore, the Court finds that Petitioner has not shown ineffective assistance of counsel with regard to this matter.

[5]Pursuant to Rule 11 of the *Rules Governing Section 2254 Cases In the United States District Courts*,

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

**DONE AND ORDERED** in Chambers in Orlando, Florida, this 28th day of July, 2014.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-2 7/28
Nicholas Jarmar Butler
Counsel of Record